UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ARVCO CONTAINER CORPORATION,

Plaintiff,

v.

WEYERHAEUSER COMPANY,

Defendant.

______________________________________/

Case No. 1:08-cv-00548

HON. ROBERT HOLMES BELL

**PLAINTIFF'S RESPONSE TO DEFENDANT WEYERHAEUSER'S MOTION FOR PROTECTIVE ORDER AND [BRIEF] IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Table of Contents

Page

Index of Authorities ........ ii

I. INTRODUCTION ........ 1

II. WEYERHAEUSER HAS NOT SHOWN GOOD CAUSE FOR AMENDING THE PROTECTIVE ORDER ........ 3

A. Weyerhaeuser Must Plead Specific Facts To Show Good Cause. ........ 3

B. The Current Protective Order Adequately Protects The Parties' Information. ........ 3

III. CONCLUSION ........ 7

Index of Authorities

Page

**Cases**

*American Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978) ........ 3

*Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, *13 (E.D. La. April 5, 2004) ........ 3

*Ex parte Miltope Corp*., 823 So.2d 640 (Ala. 2001) ........ 6

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ........ 3

*In re Plastic Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist. LEXIS 23771 (E.D. Pa. Aug. 24, 2005) ........ 6, 7

*State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852 (Mo. 1986) ........ 7

*Welsh v. Rockmaster Equip. Man. Inc.*, 4 F. Supp. 2d 659 (E.D. Tex. 1998) ........ 7

**Rules**

Federal Rule 26(a) ........ 2

## I. INTRODUCTION

In its Joint Status Report, Arvco Container Corporation ("Arvco") asked Weyerhaeuser Company ("Weyerhaeuser") to produce documents showing the prices, the quantity, the quality, and the methods of delivery for the pizza boxes that Weyerhaeuser sold to Star Pizza Box, Arvco's competitor.[1] Weyerhaeuser objected to Arvco's request, and Arvco filed a motion to compel Weyerhaeuser to produce the documents. Weyerhaeuser failed to file a response within 14 days. Instead, it filed a motion for a protective order, combined with its response to Arvco's motion. This is Arvco's response to Weyerhaeuser's motion for an additional protective order.

The facts of this case are simple. Arvco and Star Pizza Box sell pizza boxes to distributors throughout the Eastern, Southern, and Midwestern regions of the United States. Arvco keeps losing customer accounts to Star Pizza Box because Star Pizza Box is selling pizza boxes at a price below Arvco's production costs. Arvco learned from several sources, including Weyerhaeuser's employees, that Weyerhaeuser was selling the pizza boxes to Star Pizza Box. Arvco asked Weyerhaeuser to sell it the same quantity and quality of boxes, at the same price that Weyerhaeuser was selling to Star Pizza Box. Weyerhaeuser refused. As a result, Arvco continues to lose customers to Star Pizza Box.

Weyerhaeuser claims that it sold the pizza boxes to both Arvco and Star Pizza Box at the same price. Weyerhaeuser claims that it has documents to prove this. The parties signed a protective order to ensure that any information divulged by the parties during discovery would be protected. Under the current protective order, the information can only be used for this litigation and cannot be shared with third parties: "the records and information each side provides the other in this litigation will be used only in the context of this litigation, . . . and that

[1] The parties agreed to treat the requests in the Joint Status Report as discovery requests under Rule 34.

said records and information will not be disclosed by either side to third parties outside the litigation." **Exhibit 1** (emphasis added).

Arvco produced the documents in its possession to Weyerhaeuser under Federal Rule 26(a). In the Joint Status Report, Arvco asked Weyerhaeuser to produce documents showing the prices, the quantity, the quality, and the methods of delivery for the pizza boxes that Weyerhaeuser sold to Star Pizza Box. But when Weyerhaeuser had the chance to produce the documents that it claimed were exculpatory, it balked.[2] Instead, Weyerhaeuser claimed the documents were not relevant, which makes no sense. If the documents are exculpatory, then clearly they are relevant.

Weyerhaeuser claims that the current protective order is not enough. Weyerhaeuser wants a new protective order that prevents any of Arvco's employees from seeing the documents.[3] Weyerhaeuser has come up with several reasons why Arvco's employees should not see the documents, but its reasons are unpersuasive.

Weyerhaeuser primarily claims that Arvco is a potential competitor for its business with Star Pizza Box.[4] This is false. Arvco has never sold to Star Pizza Box and has no intention to because Arvco and Star Pizza Box are competitors. Arvco is in the business of selling pizza boxes to distributors through its brokers. In contrast, Weyerhaeuser is in the business of turning trees into corrugated boxes and selling the boxes to companies with

---

[2] Of course, Weyerhaeuser does not admit that it balked. It claims to have "immediately endeavored to provide Arvco's counsel information" and entered the protective order "[i]n an effort to allow for speedy and fulsome exchange of information through discovery." (Defs. Mot. Pr. Or. p. 3). But it has not produced a single document.

[3] As Arvco explained in its motion, Arvco's employees need to see the documents because they are intimately involved in the corrugated box industry, and Arvco's attorneys are not. Weyerhaeuser claims that if there was a price difference it was due to quality or volume of the pizza boxes. Arvco is suspicious of these claims because it asked for the same boxes. Arvco's employees need to examine the purchase orders to see if there was a tangible difference in volume or quality that actually caused a difference in price.

[4] Weyerhaeuser points to Arvco's Complaint, which says that both Arvco and Weyerhaeuser are in the business of transforming paper into corrugated boxes. But this ignores one very important fact: Weyerhaeuser's business is to manufacture trees into corrugated paper; Arvco's business is to sell corrugated boxes through its brokers to its distributor customers. Arvco does not care if it buys the corrugated boxes, or makes them from paper that it buys from companies like Weyerhaeuser—it is in the business of selling the boxes.

distribution systems, like Arvco and Star Pizza Box. Arvco and Weyerhaeuser do not compete for Arvco's customer accounts because they are in different businesses. Despite Weyerhaeuser's arguments, it has failed to articulate good cause for implementing an attorneys eyes only protective order.

## II. WEYERHAEUSER HAS NOT SHOWN GOOD CAUSE FOR AMENDING THE PROTECTIVE ORDER.

### A. Weyerhaeuser Must Plead Specific Facts To Show Good Cause.

Weyerhaeuser must set forth specific facts showing good cause for a protective order and may not rely on conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Since the parties already have a protective order in place, Weyerhaeuser faces an even higher burden. *See American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978). Weyerhaeuser must articulate a clearly defined and specific serious injury to justify adding an attorneys eyes only provision to the current protective order. *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, *13 (E.D. La. April 5, 2004).[5]

### B. The Current Protective Order Adequately Protects The Parties' Information.

The current protective order prevents the parties from using any information disclosed during discovery for any purpose other than in the context of the litigation:

> The parties stipulate that the records and information each side provides the other in this litigation will be used only in the context of this litigation, that the records and information will be returned to the respective party after the litigation ends, and that said records and information will not be disclosed by either side to third parties outside this litigation.
>
> **Exhibit 1**.

[5] A copy of this case is attached as **Exhibit 2**.

Weyerhaeuser claims that this protective order is deficient in two ways. It claims that the protective order does not protect the parties "from potential anti-competitive harm from the disclosure of trade secrets," and does not prevent "the disclosure of input costs and output prices in the pizza box reseller market from being disclosed in court filings to other competitors at large." (Defs. Mot. Pr. Or. p. 7). But Weyerhaeuser never explains how the current protective order is deficient. The current protective order forbids Arvco from using any information in any context outside of litigation. Using the information for anti-competitive purposes[6] is forbidden by the current protective order. Weyerhaeuser supports its position by citing cases where courts implemented protective orders to protect competitive information. *Id.* at 7. But there is already a protective order in place in this case. Weyerhaeuser never explains why the current protective order is insufficient. *See id.*

Weyerhaeuser claims that if Arvco receives the information, it can attempt to compete with Weyerhaeuser for Star Pizza Box's business. This is ridiculous. Arvco has never attempted to sell boxes to Star Pizza Box because it competes with Star Pizza Box for the same customers. (Pls. First Am. Compl. ¶ 16). Star Pizza Box and Arvco are in the business of selling pizza boxes to distributors. Weyerhaeuser is not. Weyerhaeuser is in the business of transforming trees into corrugated boxes to sell to companies like Star Pizza Box and Arvco. Weyerhaeuser and Arvco do not compete for Arvco's customer accounts. **Exhibit 3**.

Weyerhaeuser is an integrated paper company. Weyerhaeuser owns trees that it turns into paper. *Id.* at 6. Weyerhaeuser sells some of the paper on the market. It transforms the rest of the paper into corrugated paper. It then converts the corrugated paper into corrugated boxes, and sells these boxes.

[6] Weyerhaeuser has not pointed to any evidence that Arvco is going to misuse the information. Arvco regularly signs confidentiality agreements in the course of business, and will not misuse the information that Weyerhaeuser marks as confidential.

Arvco's business is to sell corrugated boxes to its distribution customers through its broker networks. **Exhibit 3**. It has the capability to transform paper into corrugated paper and then convert the paper to corrugated boxes.[7] But its ultimate goal is to sell pizza boxes through its brokers and its distribution system. Arvco does not care if it buys corrugated boxes, or if it buys paper to transform into corrugated boxes. Like Star Pizza Box, and unlike Weyerhaeuser, Arvco's business is the distribution of pizza boxes.

Weyerhaeuser claims that it is "curious" why Arvco decided to purchase pizza boxes from Weyerhaeuser when it could have made the boxes itself. It is not curious at all. After Arvco learned that Weyerhaeuser was selling pizza boxes for less than what it cost Arvco to purchase the paper and make the boxes, it became an obvious business choice. It had to purchase the pizza boxes from Weyerhaeuser in order to stay competitive with Star Pizza Box.

Weyerhaeuser claims that it has learned "salient facts" since signing the first protective order, which justify another protective order. Weyerhaeuser claims that it learned that Arvco's theory was "much broader than what the complaint alleges," and that Arvco "contends that all competitive sales information . . . for . . . 2006-2008 [is relevant]." (Defs. Mot. Pr. Or. p. 3, 9). This is not true. In June, Arvco's Complaint alleged that Weyerhaeuser discriminated in price between Star Pizza Box and Arvco from 2006 through 2008. (Dkt. No. 1, ¶¶ 9-19). And Arvco's Complaint never limited the lawsuit to a specific region. *Id.* Weyerhaeuser proposed the protective order to Arvco, and entered it on behalf of the parties in September 2008. (Dkt. No. 14). Weyerhaeuser knew that Arvco's price discrimination claim covered <u>all</u> of

---

[7] The integrated companies, which own the trees and transform them to paper, control the paper market. Arvco does not own any trees or produce paper. Therefore, if it is going to make corrugated boxes, it must purchase paper on the market from companies like Weyerhaeuser. This distinction is very important. Arvco is not an integrated company competing with Weyerhaeuser. It is a pizza box supplier, which has made its own boxes in the past, but only when it was more efficient than buying boxes from integrated companies. In contrast, Weyerhaeuser's business is to manufacture paper and turn that paper into corrugated boxes.

Weyerhaeuser's sales of pizza boxes to Star Pizza Box from 2006 through 2008 because that was the scope of allegations in Arvco's Complaint.

Weyerhaeuser argues that it needs the protective order because Mr. Ford recorded a telephone conversation with John Segreti. This does not justify an attorneys eyes only protective order. It does not show that Arvco will use Weyerhaeuser's price information for any purpose outside of the context of this litigation. It only shows that Arvco expected that Weyerhaeuser would deny Mr. Segreti's admission, so Arvco tried to preserve it.

Weyerhaeuser relies on *Ex parte Miltope Corp.*, claiming that if Arvco's decision-makers discover Weyerhaeuser's price information, the knowledge will be "irreparable." In *Ex parte Miltope Corp.*, an ex-employee sued his former employer, while working for his former employer's competitor. *Ex parte Miltope Corp.*, 823 So.2d 640, 642-44 (Ala. 2001). The Alabama Supreme Court held that the trial court should not have compelled the production of the employer's trade secrets because they were privileged under the Alabama Rules of Evidence. *Id.* at 644-46. Alabama law does not apply in this case, since it is in federal court. Further, Weyerhaeuser is not a direct competitor with Arvco, Arvco is its customer. Arvco is not attempting to sell pizza boxes to Star Pizza Box, it is trying to buy pizza boxes from Weyerhaeuser at the same price as Star Pizza Box.

Weyerhaeuser cites *In re Plastic Additives Antitrust Litigation*, for the proposition that an individual involved in the decision-making process should not have access to confidential information. *In re Plastic Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist. LEXIS 23771 (E.D. Pa. Aug. 24, 2005).[8] In that case the district court modified the protective order to allow a defendant's in-house counsel to access confidential information because the in-house counsel did not take part in competitive decision-making. *Id.* at *11. This case does not support

[8] A copy of this case is attached as **Exhibit 4**.

Weyerhaeuser's position because the defendants and the plaintiffs were direct competitors and the court was concerned that the plaintiffs would learn what the defendants' plastic additives were. *Id.* Here, Weyerhaeuser and Arvco are not competitors, and Weyerhaeuser's price information will not give Arvco any advantage in the market. Arvco will simply learn the price at which Weyerhaeuser was selling pizza boxes to Star Pizza Box.

Further, in *In re Plastics Additives*, the court allowed the defendants to modify the protective order because they had joined the litigation after the first protective order was put in place and "they never had an opportunity to participate in the negotiation of the original protective order." *Id.* at *10. Here, Weyerhaeuser proposed the terms of the first protective order, and had participated in the negotiation process.[9]

## III. CONCLUSION

Weyerhaeuser wants an attorneys eyes only protective order in addition to the current protective order in place. Weyerhaeuser fears that Arvco will use the information in the discovery documents to compete with it for Star Pizza Box's business. This is unfounded because Arvco is Star Pizza Box's competitor, and Weyerhaeuser does not compete with Arvco for any of Arvco's customer accounts. The current protective order prevents Arvco from misusing any information outside of the context of litigation and the additional protective order will not increase this protection.

[9] Weyerhaeuser also cites a Missouri case, *State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852 (Mo. 1986) and *Welsh v. Rockmaster Equip. Man. Inc.*, 4 F. Supp. 2d 659 (E.D. Tex. 1998). These cases are not applicable. In *Enright*, the court addresses whether the plaintiffs may obtain peer review documents in discovery in a medical malpractice case. *State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 854 (Mo. 1986). In *Welsh*, the parties to the lawsuit were former business partners who had developed a machine together but one party had listed himself as the sole inventor in the patent application. *Welsh v. Rockmaster Equip. Man. Inc.*, 4 F. Supp. 2d 659, 663 (E.D. Tex. 1998). Neither case applies an attorney eyes only protective order to the discovery of price information between a manufacturer and its customer, in a price-discrimination case.

WHEREFORE, for the reasons stated above, Arvco respectfully requests this Court to deny Weyerhaeuser's motion for an additional protective order and to grant Arvco's motion to compel the production of documents.

MILLER JOHNSON
Attorneys for Plaintiff

Dated: December 29, 2008

By /s/ Craig H. Lubben
Craig H. Lubben (P-33154)
Joshua D. Meeuwse (P-71412)
Business Address:
Rose Street Market Building
303 North Rose Street, Suite 600
Kalamazoo, MI 49007-3850
Telephone: (269) 226-2950