UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

――――

ARVCO CONTAINER CORPORATION, )
)
Plaintiff, )          Case No. 1:08-cv-548
)
v. )          Honorable Robert Holmes Bell
)
WEYERHAEUSER COMPANY, )
)          **MEMORANDUM OPINION**
Defendant. )
_____ )

This is an antitrust case brought under the Robinson-Patman Act, 15 U.S.C. § 13, alleging secondary-line price discrimination. Plaintiff asserts that defendant, Weyerhaeuser Company, is selling pizza boxes to Star Pizza Box at a price significantly less than the price that Weyerhaeuser is willing to charge plaintiff. The matter is before the court on plaintiff's motion to compel production of sales and pricing documents by defendant regarding its transactions with Star Pizza Box from 2006 to the present and defendant's motion for a protective order seeking stringent limitations on the use and dissemination of those documents.

**Nature of Plaintiff's Claims**

Plaintiff alleges price discrimination by defendant, a manufacturer and seller of boxes. The history of federal prohibition against price discrimination begins with section 2 of the Clayton Act in 1914, passed by Congress to prevent financially powerful corporations from employing localized price-cutting tactics to the detriment of their competitors. *See FTC v. Anheuser-Busch,*

*Inc.*, 363 U.S. 536, 543 (1960).  Congress amended section 2 of the Clayton Act in 1936 by passage of the Robinson-Patman Act.  This Act sought to target the "perceived harm to competition occasions by powerful buyers, rather than sellers; specifically, Congress responded to the advent of large chain stores, enterprises with the clout to obtain lower prices for goods than smaller buyers could demand."  *Volvo Trucks No. Am. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006).  The Act provides, in relevant part:

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

Clayton Act § 2(a); 15 U.S.C. § 13(a).  In brief, section 2(a) prohibits a seller from discriminating in price between two or more competing buyers in the sale of commodities of like grade and quality, where the effect of the discrimination "may be substantially" to lessen competition in any line of commerce.  Two types of possible injury to competition are commonly alleged in a Robinson-Patman case.  The first is referred to as "primary-line injury," because the actual or threatened injury is to competition between the seller granting the discriminatory price and the seller's competitors.  *See Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993).  The second type of injury is referred to as "secondary-line injury," because the actual or threatened injury is to competition between the favored customer of the seller who receives the discriminatory price and the seller's disfavored customers.  *See Volvo*, 546 U.S. at 176.  In the present case, Arvco Container Corporation alleges a case of secondary-line injury.

-2-

To establish its claim under the Robinson-Patman Act of secondary-line injury, plaintiff in the present case must show that (1) Weyerhaeuser discriminated in price between plaintiff and Star Pizza Box; (2) the relevant sales were made in interstate commerce; (3) the pizza boxes were of "like grade and quality;" and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of the favored purchaser, *i.e.,* Star Pizza Box.  *See Volvo*, 546 U.S. at 176-77.  In a secondary-line section 2(a) case, the plaintiff must both show that it competes with the favored purchaser and that the plaintiff and the favored purchaser operate in the same geographic market.  *See Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 521 (6th Cir. 2004).[1]

Plaintiff's complaint alleges that defendant Weyerhaeuser is in the business of processing trees into paper pulp, transforming the paper pulp into corrugated paper, and making the corrugated paper into corrugated boxes to be sold to customers.  (Compl. ¶ 6).  Plaintiff Arvco is in the very same business of purchasing paper pulp, transforming it into corrugated paper, and making the corrugated paper into boxes, to be sold to customers.  (Compl. ¶ 8).  Hence, plaintiff and defendant are direct competitors in the manufacture and sale of corrugated boxes.  Plaintiff alleges that starting in the year 2006, it began losing sales to a competitor company, Star Pizza Box.  (Joint Status Report (JSR), docket # 11, at 2).  Plaintiff asserts that it was unable to manufacture the boxes at a cost that would allow it to compete with Star Pizza Box.  Consequently, plaintiff sought to purchase boxes from its competitor, Weyerhaeuser, on the belief that Weyerhaeuser was selling pizza boxes to Star Pizza Box at a price of $36 per thousand square feet, a price that plaintiff asserts was less than its own cost of manufacture.  (JSR at 2; Compl. ¶ 13).  Plaintiff alleges that Weyerhaeuser

---

[1] The Robinson-Patman Act recognizes certain affirmative defenses available to defendants, including cost justification and meeting competition.

had been selling corrugated pizza boxes to Star Pizza Box at this price since about 2006.  (Compl. ¶ 10).  Plaintiff alleges, however, that Weyerhaeuser refused to sell boxes to plaintiff at $36 per thousand square feet, but instead sold corrugated boxes to plaintiff at about $43 per thousand square feet. (Compl. ¶ 11).  Plaintiff alleges that it is in direct competition with Star Pizza Box as a seller of corrugated boxes.  (Compl. ¶ 16).  Consequently, even though plaintiff competes with Weyerhaeuser as a manufacturer, it brings this case for secondary-line discrimination in its role as a *customer* of Weyerhaeuser and competitor of Star Pizza Box.

Weyerhaeuser denies that it sold boxes to Star Pizza Box at $36 per thousand square feet.  (Ans. ¶ 10, docket # 6).  In its affirmative defenses, Weyerhaeuser asserts that if there were a price differential between the price charged to plaintiff and to Star Pizza Box, the price differential was justified by differences in grade and quality, differences in volume, or market differences. Defendant also asserts that it does not supply Star Pizza Box in any operation that competes with plaintiff.

## **Discovery Requests**

The discovery requests at issue seek basic information regarding sales of corrugated boxes by Weyerhaeuser to Star Pizza Box from the year 2006 to the date of the request:

(a)      Any and all documents, memoranda and e-mails between Defendant's representatives and representatives of Star Pizza Box regarding the price, quantity and specifications for pizza boxes sold by Defendant to Star Pizza Box from 2006 to the present; and

(b)      All quotations, purchase orders, confirmations, invoices and other documents Defendant has in its possession showing prices Weyerhaeuser charges [sic] Star Pizza Box and Plaintiff from 2006 to the present.

-4-

Plaintiff made the request in the joint status report, filed in connection with the Rule 16 scheduling conference conducted in September 2008.[2]  Defendant has objected to the production of these documents, raising a veritable barrage of reasons why it should not be required in the circumstances of this case to produce the requested information.  Plaintiff moved on November 25, 2008, for an order compelling production of these documents.  On December 12, 2008, defendant filed its brief in opposition to plaintiff's motion, along with its own motion for protective order.  Plaintiff answered the motion for protective order, and defendant was granted leave to file a reply brief.

Defendant resists production of the requested documents on the ground that they are irrelevant.  Alternatively, defendant seeks a protective order directing that the produced documents be disclosed only to plaintiff's counsel and expert witnesses.  Defendant's reasons in support of these two requests range from the weak to the frivolous.  For the reasons set forth below, the court finds that defendant must be compelled to produce the requested information, which is central to this Robinson-Patman case, and that defendant has not met its burden to show that the extremely restrictive protective order that it seeks is supported by good cause.

## Discussion

### A.     Relevance

The Federal Rules of Civil Procedure allow a party to obtain discovery regarding any non-privileged matter "that is relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1). In the present case, the sales and pricing information sought by plaintiff are directly relevant to plaintiff's claims.  Plaintiff seeks documents disclosing the price, quantity and specifications for

---

[2] The parties stipulated (docket # 23) that the document requests contained in the Joint Status Report would be deemed discovery requests.

pizza boxes sold by defendant to Star Pizza Box. In a case for price discrimination under section 2(a) of the Clayton Act, plaintiff has the burden of establishing the fact of sales to a favored purchaser and the price at which the sales were made. *See Volvo*, 546 U.S. at 176. Plaintiff also seeks information concerning the specifications for the boxes sold to Star Pizza Box. This information is relevant to the statute's requirement that sales be of commodities of "like grade and quality." Defendant's answer denies that it sold corrugated boxes to Star Pizza Box for about $36 per thousand square feet. (Ans. ¶ 10). The issue is therefore one for discovery and proof at trial. It is difficult to imagine a more relevant line of inquiry in a Robinson-Patman case than the quantities, prices, and specifications of commodities sold by a defendant to an allegedly favored purchaser.

Defendant nevertheless resists plaintiff's motion to compel on the ground that the requested documents are somehow "irrelevant." Defendant's relevance objections are set forth in a document served on November 3, 2008. (docket # 42-7). A principal ground for defendant's claim of irrelevance is the assertion that plaintiff's lawsuit is meritless. Defendant asserts in a single sentence that Weyerhaeuser never sold like grade and quantity of pizza boxes to Star Pizza at $36 per thousand square feet. On the basis of this unadorned statement, defendant apparently expects the court to adopt its view of the case and reject all efforts by plaintiff to prove its claims by discovery. Defendant cites no authority that would support its obviously improper efforts to resist core discovery on the ground of its unilateral view of the merits of the opponent's case.

Defendant also objects to the scope of the requested document production, contending that all sales before the year 2008 are irrelevant. It is certainly true that allegedly discriminatory sales must occur reasonably contemporaneously in order to form the basis for a Robinson-Patman

-6-

claim.  *See, e.g., Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 693 (5th Cir. 2003).  At the discovery stage of the case, however, it is not possible to determine with precision the nature of competition in the market, such that a "reasonably contemporaneous" time period can be defined or the potential harm to competition assessed.  Consequently, at the discovery stage, courts determining Robinson-Patman cases hold that the temporal scope of discovery "should not be confined to the limitations period of the antitrust statutes or to the damage period, and plaintiff is ordinarily permitted to discover defendant's activities for 'a reasonable period' of time antedating the earliest possible date of the actionable wrong."  *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, No. 01-2410-JAR, 2003 WL 21939019, at * 3 (D. Kan. July 22, 2003) (footnotes and citations omitted) (quoting *Quonset Real Estate Corp. v. Paramount Film Distrib. Corp.*, 50 F.R.D. 240, 241 (S.D.N.Y. 1970)).  In the *B-S Steel* case, the court allowed the Robinson-Patman plaintiff to discover information for sales that took place after the alleged price discrimination.  The court found that the request was supportable because it provided important information for an analysis of the product market in question.  *Id.* at * 3.[3]  Defendant has provided no cogent analysis supporting its contention that discovery in this case should be limited to the year 2008, in contravention of the usual rule.  The time period of 2006 through September 2008 (the month of the request) is reasonable for purposes of discovery.

_____

[3] Ultimately, the Tenth Circuit found that the Robinson-Patman claim faltered for failure of proof of reasonably contemporaneous sales, but did not express any disagreement with the scope of discovery allowed by the trial court.  *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 665 (10th Cir. 2006).

Defendant has resisted since September 2008 the production of core discovery information in a Robinson-Patman case on the ground that the discovery was "irrelevant." This is an abuse of the discovery process.

### B.       Motion For Protective Order

Although defendant knew that plaintiff was seeking information concerning sales to Star Pizza Box since early September 2008, defendant delayed in moving for a protective order until December 12, 2008. Defendant's motion for protective order seeks imposition of the most restrictive possible conditions on the dissemination of the price, quantity, and specification information sought by plaintiff. Defendant asks the court to limit this information to plaintiff's attorneys and expert witnesses, specifically excluding any employee of plaintiff. Defendant's ground for seeking this relief is the assertion that the information sought represents trade secret or other confidential information and would be subject to abuse by plaintiff, which competed with defendant in the past and may compete in the future.

Federal Rule of Civil Procedure 26(c) authorizes a court, upon a showing of good cause, to issue a protective order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense," including an order forbidding the discovery or requiring that a trade secret or other confidential information not be revealed or be revealed only in a specified way. FED. R. CIV. P. 26(c)(1)(A), (G). A party seeking relief under Rule 26(c) must demonstrate the alleged harm "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Where a business is the party

seeking protection, it is obliged to show that "disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987); *accord Tinman v. Blue Cross & Blue Shield of Mich.*, 176 F. Supp. 2d 743, 745-46 (E.D. Mich. 2001); *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D. Mich. 1981) (movant must make a particularized showing that the information sought is confidential and come forth with specific examples of competitive harm). Moreover, because a protective order is already in place limiting the use and dissemination of discovery materials, defendant bears the burden of demonstrating why the current order is insufficient and a modification is necessary. *See Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978); *Children's Legal Serv. P.L.L.C. v. Kresch*, No. 07-cv-10255, 2007 WL 4098203, at * 2 (E.D. Mich. Nov. 16, 2007).

Defendant seeks the most restrictive possible protective order, confining dissemination of discovery materials to plaintiff's attorneys and expert witnesses only. To be sure, courts in many circumstances have found that a specific showing of competitive harm justifies a restriction of confidential or trade secret information to "attorney's eyes only." *See, e.g., Avocent Redmond Corp. v. Rose Elec., Inc.*, 242 F.R.D. 574, 576 (W.D. Wash. 2007). Other courts, however, have recognized the harm that the indiscriminate use of "attorney's eyes only" protective orders can cause, especially in the absence of a strong showing of probable competitive harm. *See, e.g., Key Components, Inc. v. Edge Elec., Inc.*, No. 3:07-cv-224, 2008 WL 4937560, at * 3-5 (E.D. Tenn. Nov. 17, 2008). One court has warned against the overuse of "attorney's eyes only" protective orders:

> On the other hand, this is not a case where the clients have no real, meaningful input to make into tactical decisions, or where their input would not be helpful in determining the bona fides of the information submitted by defendants. Moreover, the very real specter of over-designation of "attorneys' eyes only" information exists, and plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case.

*DeFazio v. Hollister, Inc.*, No. Civ-5-04-1358, 2007 WL 2580633, at * 2 (E.D. Cal. Sept. 5, 2007). Determination of the good-cause issue, therefore, requires a balance of the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors. *Id.* at * 1. It is clear to this court that the indiscriminate use of "attorney's eyes only" protective orders does pose a significant handicap on the restricted litigant. Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant. Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case. Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment.

Some of the arguments made by defendant in support of its motion for protective order are completely insubstantial. Defendant asserts that it is "curious" that plaintiff decided to purchase boxes from defendant when it could have made the boxes itself. (Brief, docket # 42, at 2).

-10-

Plaintiff has explained, however, that it could not manufacture boxes as cheaply as defendant was selling them to Star Pizza Box.  If this is true, plaintiff's desire to buy boxes from defendant is not a bit "curious."  Defendant also discerns sinister motive from plaintiff's demand that defendant's national account representative for the Star Pizza Box account, John Segreti, be involved in the discussions regarding plaintiff's purchase request.  (*Id.* at 2).  Plaintiff is unsuccessful in explaining why this demonstrates a desire on plaintiff's part to abuse confidential information.  Defendant also tries to emphasize the efforts by Robert Ford, plaintiff's representative, to record conversations with Mr. Segreti relating to pricing and product availability.  (*Id.*).  Defendant goes so far as to provide the court with a twenty-two minute audio recording of one of these conversations.  The recording of telephone conversations, although impolite, is often legal under state law and is becoming a rather commonplace tool by which litigants attempt to prove their cases.  Finally, in this vein, defendant is puzzled at the fact that plaintiff's president wished to participate in discussions involving a potential business arrangement.  (*Id.* at 3-4).  These arguments, considered singly or in combination, do little to persuade the court that plaintiff is a nefarious business attempting to gain a competitive advantage through this lawsuit.  These "atmospherics" do nothing to discharge defendant's burden under Rule 26(c).

At heart, defendant's request for a restrictive protective order is based upon two factual assertions:  (a) plaintiff and defendant are direct competitors and (b) defendant's historical pricing information regarding sales to Star Pizza Box is a trade secret or confidential business information.  With regard to the first contention, there can be little dispute.  The allegations in plaintiff's complete make it clear that plaintiff is sometimes a direct competitor of defendant, although the present suit is brought in plaintiff's capacity as a customer.

Defendant's contention that its historical pricing information is a trade secret or confidential information, however, does not withstand scrutiny. A court cannot presume, in the absence of proof, that a particular company's prices are confidential. Although price information can be proprietary, it may not be confidential in the least, depending on the circumstances. In a highly competitive market, one which approaches the economists' concept of "perfect competition," the price level emerges from the interaction of demand with all firms' output decisions. Therefore, sellers are "price takers" with no power to set the price. *See generally AA Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989). In such competitive markets, there are no secrets about price, as buyers and sellers are fully informed about the price and availability of products. WILLIAM A. MCEACHERN, MICROECONOMICS: A CONTEMPORARY INTRODUCTION 167 (5th ed. 2000). Competition is not on the basis of price, and sellers prosper only by keeping their costs low and adopting efficiencies. Sellers in a competitive market make no effort to keep their prices secret, but publish price lists or even post their prices for the whole world to see on the Internet. By contrast, in less competitive markets, sellers have more power to influence price. Such sellers are deemed to have "market power," defined as the power to control prices or exclude competition. *See United States v. E.I. DuPont Nemours & Co.*, 251 U.S. 377, 391 (1956); *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 935 (6th Cir. 2005). As a firm's market position approaches a pure monopoly (again, a theoretical construct), the firm has the power to engage in "perfect price discrimination," charging a different price for each unit of the commodity. MCEACHERN at 214. The firm's power over price requires secrecy, so that the monopolist can extract maximum monopoly rents from each transaction. In less competitive markets, where sellers exercise market power, price differentials may be significant, and sellers may treat their prices as

-12-

proprietary.  In the real world, markets fall somewhere on the continuum between the theoretical

extremes of perfect competition and pure monopoly, and the firms in those markets exercise more

or less control over price, depending on market conditions.

A corporation seeking to impose a restrictive protective order on price information

has the obligation of establishing that its pricing structure is indeed proprietary.  This is a matter of

proof, to be established by affidavit or other factual material, not mere assertion.  Defendant has

submitted to the court only one affidavit in support of its motion for protective order.  The affidavit

of John Segreti (docket # 42-3) does not state or imply that defendant Weyerhaeuser considers its

pricing structure to be confidential, that it takes reasonable steps to safeguard the proprietary nature

of such information, or that the market in which it operates is relatively uncompetitive.[4]  The sketchy

information provided by the Segreti affidavit, to the extent that it addresses prices at all, would

provide no information by which a court could assess the claim that Weyerhaeuser's prices for the

commodity are proprietary or that the market is such that competitors would gain an advantage if

they knew Weyerhaeuser's prices from 2006 through September 2008.  The affidavit states only that

market prices for pizza boxes are established based on volume, market and board combination and

are controlled through efficiencies based on the remaining associated costs of production.  (¶ 7).

Beyond this vague information, defendant has not provided the court with "a particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements," which would

_____

[4] Another of defendant's exhibits would indicate that its pricing structure is not proprietary.
In an e-mail dated January 27, 2007 (docket # 42-5), a Weyerhaeuser employee indicated that the
company "announced to our customers" an increase in pricing for January.  The e-mail makes it clear
that the information was released on a prospective basis, months before the increase was to take
effect.  Obviously, defendant shared its pricing structure with customers and prospective customers.
There is no indication that this announcement was accompanied by any pledge of confidentiality by
the universe of customers and potential customers to which it was given.

support a finding that prices are confidential (as opposed to reasonably available or ascertainable in the marketplace) or that production of historical pricing information would expose defendant to "a clearly defined and very serious injury," not already addressed by the existing protective order.

At best, the present record shows that defendant neither likes nor trusts plaintiff and would be uncomfortable if plaintiff's business executives had access to discovery material, because they cannot be trusted to abide by the protective order. On the present record, the court could not possibly make a finding that defendant's price structures, especially with regard to historic prices, are trade secrets or should be given confidential treatment, nor could it identify a clearly defined and serious competitive injury to defendant.[5] A litigant's vague feeling of discomfort or its desire to hobble its opponent in litigation do not establish good cause. "[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make "a particularized showing that the information sought is confidential" and come forward with "specific examples" of competitive harm. *Waelde*, 94 F.R.D. at 28 (quoting *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980)). As defendant has done neither, its motion will be denied.

Finally, this court is distressed that defendant has been successful for months in blocking on a unilateral basis discovery of the most basic conceivable information in a Robinson-Patman case. Defendant is a sophisticated litigant and should understand its obligations under the Federal Rules of Civil Procedure. Further obstruction of the discovery process will not be tolerated.

_____

[5] Defendant attempts to assert the rights of Star Pizza Box, arguing that the cost incurred by Star Pizza Box for its purchase of products is entitled to protection. It is certainly true that cost information is more likely to be proprietary than price information, especially in a competitive market. Defendant, however, has not cited any authority that would grant it standing to assert the rights of Star Pizza Box in this litigation.

-14-

Defendant and its counsel are warned that any future failure to abide by discovery obligations will

be met with the imposition of sanctions.


Dated:   February 9, 2009                     /s/  Joseph G. Scoville
                                              United States Magistrate Judge